# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

NO. 23-1747

---

## ANDREW MORGAN

*Plaintiff / Appellant,*

vs.

## ALLISON CRANE & RIGGING LLC

*Defendant / Appellee.*

---

## BRIEF OF APPELLANT AND VOLUME ONE OF APPENDIX

---

On Appeal from the Final Order of Judgment in the United States District Court for the Middle District of Pennsylvania on April 18, 2023, at No. 21-cv-00533-MWB

---

KARPF, KARPF & CERUTTI P.C.

W. Charles Sipio, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
(T) 215-639-0801
csipio@karpf-law.com

*Counsel for Appellant, Andrew Morgan*

# **TABLE OF CONTENTS**

**I.   JURISDICTIONAL STATEMENT** ............................................................1

   **a.   Basis for the District Court's Jurisdiction** ...................................1

   **b.   Basis for Appellate Jurisdiction and Finality** ............................1

   **c.   Timeliness of Appeal** ....................................................................1

**II.   STATEMENT OF RELATED CASES AND PROCEEDINGS** ...............2

**III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW** .......................3

**IV.   SUMMARY OF ARGUMENT** ..................................................................5

**V.   STATEMENT OF THE CASE** ....................................................................8

   **a.   Relevant Procedural History** .......................................................8

   **b.   Statement of Pertinent Facts** .......................................................8

**VI.   ARGUMENT** ............................................................................................16

   **a.   Standard of Review** .....................................................................16

   **b.   The District Court Unquestionably Misapplied Macfarlan and Other Applicable Law to Appellant's Prima Facie Case under the ADA/PHRA** ...16

      ***i.   The "Actual" Disability Prong was Easily Satisfied with Respect to Appellant's Claim of a Bulged / Herniated Disc*** ...........................................19

      ***ii.   The District Court Also Erred in Determining that Generalized Back Pain was Not an "Actual" Disability*** ...............................................27

      ***iii.    Appellant Could Also Establish a "Regarded As" Claim*** ....................30

      ***iv.  The District Court Incorrectly Analyzed Appellant's Failure to Accommodate Claim*** ......................................................................34

   **d.   The District Court Erred in Dismissing Appellant's ADA/PHRA Retaliation Claims Because Appellee Never Moved for their Dismissal** .......42

**VII.   CONCLUSION** ........................................................................................48

**CERTIFICATION OF WORD COUNT** .............................................................49

**CERTIFICATION OF BAR MEMBERSHIP** ....................................................50

**CERTIFICATION OF VIRUS CHECK** ............................................................51

**CERTIFICATION OF IDENTICAL BRIEFS** ..................................................52

**CERTIFICATION OF SERVICE** ......................................................................53

# **TABLE OF CITATIONS**

Cases

Allstate Life Ins. Co. v. Stillwell, 2019 U.S. Dist. LEXIS 123213, at *6 (D.N.J. July 24, 2019)................................................................................................44

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)...................................16

Bamat v. Glenn O. Hawbaker, Inc., No. 4:18-CV-01898, 2019 U.S. Dist. LEXIS 125087, at *6 (M.D. Pa. July 26, 2019)...............................................................38

Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 102 (3d Cir. 1999)...............26

Bravman v. Bassett Furniture Indus., Inc., 552 F.2d 90 (3d Cir. 1977)...................40

Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)....................................................................................................................25

Coba v. Ford Motor Co., 932 F.3d 114, 120 n.3 (3d Cir. 2019) .............................44

Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 364 (3d Cir. 2008)................................40

Donnelly v. Capital Vision Servs., 2021 U.S. Dist. LEXIS 144645, at *11 (E.D. Pa. Aug. 2, 2021) .........................................................................................................24

EEOC v. Allstate Ins. Co., 778 F.3d 444, 449 (3d Cir. 2015)..................................45

EEOC v. AutoZone, Inc., 630 F.3d 635, 643 (7th Cir. 2010) ..................................25

Eshleman v. Patrick Indus., 961 F.3d 242 (3d Cir. 2020)........................................31

Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005)..........................................46

FOP v. City of Camden, 842 F.3d 231 (3d Cir. 2016) .............................................25

Hamilton v. Westchester Cnty., 3 F.4th 86, 92-94 (2d Cir. 2021)...........................28

Hanafy v. Hill Int'l, Inc., No. 22-878, 2023 U.S. Dist. LEXIS 68170, at *17 (E.D. Pa. Apr. 19, 2023) ..................................................................................................30

J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990)........26

Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 288 (3d Cir. 2018) .........................16

Katz v. City Metal Co., 87 F.3d 26, 32 (1st Cir. 1996).............................................24

Koeppel v. Bassett, 2015 U.S. Dist. LEXIS 18841, at *21 (D.N.J. Feb. 17, 2015) 26

Lackey v. Heart of Lancaster Reg'l Med. Ctr., 704 F. App'x 41, 48 (3d Cir. 2017) 31

LaRochelle v. Wilmac Corp., 210 F. Supp. 3d 658, 717 (E.D. Pa. 2016) ..............39

Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266 (3d Cir. 2012) ......................3, 6, 18

Malzberg v. N.Y. Univ., 2022 U.S. Dist. LEXIS 54375, at *32-33 (S.D.N.Y. Mar. 25, 2022) .............................................................................................................21

Mancini v. City of Providence, 909 F.3d 32, 42 (1st Cir. 2018)..............................25

Marinelli v. City of Erie, 216 F.3d 354, 360 (3d Cir. 2000)....................................19

Martin v. Chester Charter Scholars Acad. Charter Sch., No. 20-2067, 2021 U.S. Dist. LEXIS 243373, at *20 (E.D. Pa. Dec. 21, 2021) ........................................47

Matthews v. Pa. Dep't of Corrections, 613 F. App'x 163, 167 (3d Cir. 2015).........17

Mazzocchi v. Windsor Owners Corp., 204 F. Supp. 3d 583, 609 (S.D.N.Y. 2016) 21

Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 786 (3d Cir. 1998)............45

Nagle v. Comprehensive Women's Health Servs., P.C., 2018 U.S. Dist. LEXIS 9722, at *41 (M.D. Pa. Jan. 19, 2018) ................................................................20

Oldham v. O.K. Farms, Inc., 871 F.3d 1147 (10th Cir. 2017) .................................43

Ostrowski v. Con-Way Freight, Inc., 543 F. App'x 128, 131 (3d Cir. 2013)...........17

Pallatto v. Westmorland Cty. Children's Bureau, 2014 U.S. Dist. LEXIS 27008, at *30 (W.D. Pa. Mar. 3, 2014) ................................................................................20

Reifer v. Colonial Intermediate Unit 20, 462 F. Supp.2d 621, 634 (M.D. Pa. 2006) .................................................................................................................................35

Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 43 (2d Cir. 2015) ...................21

Ruggiero v. Mount Nittany Med. Ctr., 736 F. App'x 35, 40-41 (3d Cir. 2018) .......35

Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1264 (10th Cir. 2001) .............45

Shellenberger, v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003) ..........46

Shick v. Shirley, 552 Pa. 590, 716 A.2d 1231, 1233 (Pa. 1998) .............................37

Shields v. Credit One Bank, N.A., 32 F.4th 1218 (9th Cir. 2022)...........................29

Smith v. R.R. Donnelley and Sons Co., 2011 WL 4346340, at *3 (E.D. Pa. Sept. 16, 2011) ..............................................................................................................37

Summers v. Altarum Inst., Corp., 740 F.3d 325, 330 (4th Cir. 2014) .....................29

Summers v. Altarum Inst., Corp., 740 F.3d 325, 333 (4th Cir. 2014) .....................18

Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-320 (3d Cir. 1999) ...............35

Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 997 (10th Cir. 2019) ...............25

Thomas v. Trs. of the Univ. of Pa., No. 17-5194, 2020 U.S. Dist. LEXIS 11056, at *11 (E.D. Pa. Jan. 23, 2020) ................................................................................6

Walton v. Mental Health Ass'n. of Se. Pa., 168 F.3d 661 (3d Cir. 1999) ...............35

West v. Dan Lepore & Sons Co., No. 17-1592, 2019 U.S. Dist. LEXIS 41702, 2019 WL 1227716, at *12 (E.D. Pa. Mar. 14, 2019) ...................................................43

Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 771 (3d Cir. 2004) ....................................................................................................................35

## Statutes

28 U.S.C. §1291 .......................................................................................................1

28 U.S.C. §1331 .......................................................................................................1

28 U.S.C. §1367 .......................................................................................................1

42 USC § 12102(1) .................................................................................................17

## Rules

Fed. R. App. 4(a) ......................................................................................................1

Fed.R.Civ.P. 56(f)(2) ..........................................................................................7, 43

## Regulations

Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App. (2016) ............................................................................................31

## I.    <u>JURISDICTIONAL STATEMENT</u>

### a.  Basis for the District Court's Jurisdiction

The court below properly exercised subject-matter jurisdiction over the instant matter pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1367 (supplemental jurisdiction over Appellant's state law claims).

### b.  Basis for Appellate Jurisdiction and Finality

This Court may properly exercise jurisdiction over the instant appeal pursuant to 28 U.S.C. §1291 because the Order granting Appellee's motion for summary judgment disposed of all claims and is therefore considered "final" and appealable. Appx003.

### c.  Timeliness of Appeal

The instant appeal is timely because a notice of appeal was filed within thirty ("30") days of the entry of judgment in the court below consistent with Fed. R. App. 4(a). Judgment was entered in favor of Appellee on April 18, 2023. A notice of appeal was filed on April 19, 2023. Appx001.

## II.    <u>STATEMENT OF RELATED CASES AND PROCEEDINGS</u>

There are no related cases or proceedings.

## III.    <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.  Whether the District Court erred in granting summary judgment insofar as

    1.) <u>Macfarlan v. Ivy Hill SNF, LLC</u>, 675 F.3d 266 (3d Cir. 2012) was a clear

    misapplication of the 2008 amendments to the ADA and 2.) Appellant was

    able to establish a *prima facie* case for his ADA/PHRA claims and had

    ample evidence of pretext?

    <u>Suggested Answer</u>: Yes.

2.  Whether the District Court applied the wrong standards to Appellant's

    failure to accommodate claim under the ADA/PHRA by seemingly applying

    a <u>McDonnell Douglas</u> burden shifting framework?

    <u>Suggested Answer</u>: Yes.

3.  Whether the District Court erred in granting summary judgment as to

    Appellant's common law claim for wrongful discharge?

    <u>Suggested Answer</u>: Yes.

4.  Whether the district court erred in granting summary judgment as to

    Appellant's ADA/PHRA retaliation claims when the Appellee did not

    explicitly seek to dismiss the same in its motion for summary judgment, thus

    waiving the same? Alternatively, whether the district court erred in failing to

    give notice to Appellant of its intent to dismiss said claims pursuant to

    Fed.R.Civ.P. 56(f)(2)?

<u>Suggested Answer</u>: Yes.

5. Even if the Appellee did not waive its right to challenge the retaliation claim or if the District Court did not err with respect to Fed.R.Civ.P. 56(f)(2), whether the Court erred in granting summary judgment as to the ADA/PHRA retaliation claims on the merits?

<u>Suggested Answer</u>: Yes.

Pursuant to LAR 28.01, Appellant asserts that these issues were preserved by virtue of opposition to Appellee's motion for summary judgment in the court below and that no further preservation of these issues was necessary.

## IV.   <u>SUMMARY OF ARGUMENT</u>

This is an employment discrimination case. Appellant, a driver for Appellee, contended in the court below that he was unlawfully discharged from his employment on or about November 18, 2020. He brought claims against the Appellee under the ADA and PHRA in addition to a Pennsylvania common law wrongful discharge claim based on Appellee's perception that Appellant might seek workers' compensation benefits from a work injury. Respectfully, the district court below made several clear errors of law warranting relief on appeal.

<u>First</u>, the district court found that Mr. Morgan failed to establish a *prima facie* case for his ADA claim because he allegedly needed medical evidence to substantiate an impairment i.e. an "actual disability". This is patently incorrect and the district court misapplied precedent. The district court's logic below is simply inconsistent when it acknowledges that much more nuanced and "complex" medical ailments have been recognized by courts as "disabilities" not requiring medical evidence such as depression, anxiety, PTSD, and learning disabilities. Those diseases are arguably much more complicated and not as easily comprehensible to a lay jury.

Alternatively, even if medical evidence was required, the district court erred by concluding the chiropractor's notes were inadmissible hearsay because his testimony was "capable of being admissible" at trial as a treating diagnosis.

Similarly, the district court erred in finding that generalized back pain failed to qualify as a "disability" because it was a "non-chronic" impairment. In doing so, the district court explicitly relied on the Third Circuit's decision in <u>Macfarlan v. Ivy Hill SNF, LLC</u>, 675 F.3d 266 (3d Cir. 2012). This was also an error, and this exact problem was addressed in some detail by the Eastern District of Pennsylvania in <u>Thomas v. Trs. of the Univ. of Pa.</u>, No. 17-5194, 2020 U.S. Dist. LEXIS 11056, at *11 (E.D. Pa. Jan. 23, 2020). In that case, the Eastern District recognized that <u>Macfarlan</u> was essentially an "intentional application of the pre-amendment ADA standard" and was thus inapplicable to claims brought under the post 2008 amendments to the ADA. <u>Id</u>. at *12.

<u>Second</u>, the district court seemingly applied a <u>McDonnell Douglas</u> burden shifting framework (or no framework at all) to Appellant's ADA/PHRA failure to accommodate claim. Several courts, including the Eastern District of Pennsylvania, have recognized that such claims are **<u>not</u>** subject to such a framework and instead apply a different test. An application of the relevant test would have established a dispute of material fact for trial on the failure to accommodate claim.

<u>Third</u>, the district court analyzed Appellant's common law wrongful discharge claim under Pennsylvania law and found that it did not survive summary judgment on the factual record. This was wrong for several reasons. The court below acknowledged that Appellant 1.) reported a work injury and 2.) even

acknowledged some evidence in the record that suggested Appellant was discouraged or misled by Appellee as to his eligibility for benefits. However, the court concluded even with this evidence, there was a lack of "intent" on the part of Appellant to file a workers' compensation claim.

This was an error of law insofar the "intent" should have been inferred from the circumstantial evidence present in the record. This was not a case where the employer was merely "aware" of the injury with nothing more. The evidence implied the Appellee was aware Appellant considered benefits and questioned management about it-- even if he did not manifest that clear and unambiguous intent.

Fourth, the district court erred in granting summary judgment as to Appellant's ADA/PHRA retaliation claims because Appellee **did not even move to dismiss them**. Putting aside whether Appellee waived any right to seek dismissal vis-à-vis Fed.R.Civ.P. 56, the Federal Rules of Civil Procedure plainly require a district court to give "notice" of intent to grant summary judgment on grounds not raised by the moving party. *See* Fed.R.Civ.P. 56(f)(2).

For the reasons set forth herein, the judgment of the district court should be reversed, and this matter should be remanded for trial or other further such proceedings as this Court deems appropriate.

### V.    <u>STATEMENT OF THE CASE</u>

#### a.  Relevant Procedural History

Appellant commenced this action by filing a complaint in the Court below on March 23, 2021. This complaint was amended by consent on or about June 21, 2021 to incorporate a parallel claim under the PHRA once administrative remedies were exhausted. Appx507-516. On October 17, 2022, Appellee filed a motion for summary judgment consistent with Fed.R.Civ.P. 56. Appx26-113. A timely opposition was filed as well as a reply and sur-reply. Appx114-426 ; Appx427-498 ; Appx499-506.

On April 18, 2023, the district court entered an order, memorandum and final judgment granting Appellee's motion in its entirety. Appx3-25. A timely notice of appeal was filed on April 19, 2023. Appx001.

#### b.  Statement of Pertinent Facts

Appellant initially began his employment with Appellee in or about 2018 on the Millwright Crew in Williamsport. Appx183 at 14:14-21. He left Appellee's employ in or about late-June of 2018 and thereafter returned to Appellee's Millwright Crew as a Laborer in or about February of 2019. Appx183 at 15:23-25, 17:2-6. Appellant remained in this position until his supervisor, Brian Bonislawski ("Bonislawski") unlawfully terminated his employment on or about November 18, 2020. Appx189 at 38:16-25; Appx212 ; Appx250 at 66:14-17.

8

As a Millwright Crew Laborer, Appellant reported to numerous supervisors, including Robert Mundrick ("Mundrick"), Project Manager/Supervisor and Dave Phillips ("Phillips"), Millwright Department Supervisor, who supervised Appellant from in or about February 2019 through November 2020. Appx183 at 17:10-11, 17:24-18:2; Appx216 at 7:12-21; Appx281-282 at Interrogatory No. 2. Further, Bill Schmedley ("Schmedley") was the Head of Dispatch and supervised Appellant from in or about February 2019 until in or about October 2020. Appx183 at 17:20. Upon Schmedley's departure, in or about October of 2020, Brian Bonislawski ("Bonislawski") took over Schmedley's responsibilities. Appx184 at 21:16, Appx240-241 at 28:24-29:3; Appx281-282 at Interrogatory No. 2.

On September 29, 2020, Appellant suffered an injury while at the MIS Swasco in Williamsport performing a project. Appx186 at 26:23-27:8; 27:13-17; Appx293-294; Appx296-297 ; Appx299 ;  Appx307 at 21:10-20. More specifically, Appellant was in the cleanup stage of the project when he felt a pop in his lower back and immediately experienced pain as a result. Appx186 at 26:23-27:8.

As a Millwright Laborer, Ryan Hastings ("Hastings"), Foreman, was the proper individual to whom Appellant was to report the workplace injury. Appx254 at 82:1-9. Appellant immediately reported his workplace injury to Hastings. Appx186 at 29:20-24. In response, Hastings assured Appellant that he would report his injury to Mundrick. Appx186 at 29:20-24.

The following day, on September 30, 2020, when Appellant returned to work, he notified his crew, including Hastings, that he was still in pain from his workplace injury and was considering medical treatment. Appx186 at 27:18-23, 30:15-22. Subsequently, Appellant secured an appointment with Powers Chiropractic for October 1, 2020, and attended this appointment on said date. Appx187 at 32:4-9; Appx293-294.

As a result of his injury on the job, on October 1, 2020, Appellant testified that his chiropractor diagnosed him with a bulged and/or herniated disc in his lower back. Appx187 at 32:19-23. Thereafter, Appellant followed his chiropractor's treatment plan by reporting for medical treatment two (2) days per week due to his severe lower back pain. Appx187 at 33:7-18; Appx293-294. Appellant experienced difficulties and pain when turning his body, sitting, and walking. Id.

Due to his workplace injury and/or disability and/or perceived disability and/or record of impairment, Appellant's chiropractor initially placed him on light duty from October 1, 2020 until October 8, 2020 by way of doctor's note. Appx339. Thereafter, the chiropractor provided Appellant with a second doctor's note, dated October 8, 2020, that excused him from bending and/or lifting anything over fifteen (15) pounds for the following two (2) weeks. Appx386.

Appellee alleged below that it placed Appellant on light-duty restrictions as a reasonable accommodation for his workplace injury and/or disability and/or record of impairment. Appx188 at 36:2-10; Appx242 at 34:14-35:3; Appx307 at 21:10-20. However, it was up to the dispatcher's ***sole discretion*** to determine what qualified as a "light duty" in accordance with an employee's reasonable accommodation requests. Appx223 at 33:19-34:7; Appx331 at 39:2-4.

Appellant's chiropractor continued to provide light duty notes for Appellant for the remainder of his tenure with Appellee. Appx296-297 ;  Appx341. Appellant testified at his deposition that he continued to suffer from his herniated/bulging disc as there was always a probability Appellant could reinflame the same. Appx194 at 59:17-60:6. Appellant provided the doctor's notes to Ungard, Bonislawski, and/or Mundrick. Appx188 at 37:17-38:1.

Almost a week after his workplace injury and/or disability and/or record of impairment, on October 7, 2020, Appellant met with Bonislawski, Ungard, and Autumn Bullock ("Bullock") to discuss his workplace injury. Appx188 at 35:2-11; Appx241 at 32:23-33:1; Appx299. Appellant made Bonislawski, Ungard, and Bullock fully aware of his workplace injury and/or disability and/or record of impairment by thoroughly describing the incident and detailing his medical treatment plan. Id.

Bonislawski further understood Appellant could not lift more than fifteen (15) pounds. Appx242 at 34:14-20; Appx386. During said meeting, ***not a single individual present, including Appellant's own supervisor,*** advised Appellant of his worker's compensation rights. Appx190 at 45:22-25. Instead, Bonislawski and Ungard ***actively discouraged Appellant*** from filing a Worker's Compensation claim. Appx188 at 35:12-23, 36:2-10, 36:23-37:8. In fact, Bonislawski and Ungard specifically informed Appellant that he did not qualify for Worker's Compensation even though his injury and/or disability and/or record of impairment occurred at work. Appx191 at 49:8-12. Bonislawski even brought up short-term disability with Appellant, seemingly confirming the fact that he perceived Appellant as disabled. Appx195 at 64:1-7. Additionally, Ungard failed to conduct an investigation into Appellant's report of his workplace injury and/or disability and/or record of impairment. Appx329 at 24:10-22; Appx353-354 at 40:7-13, 41:2-20.

Shortly after Bonislawski and Ungard discouraged Appellant from filing a worker's compensation claim, Appellee, through its employees embarked upon a campaign of discrimination and retaliation against Appellant. Appx192 at 50:14-18. By way of example and referenced in the briefing below, Bonislawski had never written up Appellant prior to his workplace injury, disclosure of his disability and/or record of impairment, and request for reasonable accommodation. Appx192 at 51:8-1; Appx388-421.

Yet, on November 11, 2020, Bonislawski issued Appellant a warning for allegedly not wearing proper personal protective equipment ("PPE"). Appx192 at 51:8-9. Bonislawski did not write up other employees working in the yard who did not have on the proper PPE on said date. Appx192 at 51:8-9; Appx245 at 46:21-47:1; Appx314 at 49:6-11; Appx351 at 32:2-33:5. Moreover, Bonislawski admitted that Appellant ***never*** had a recurring problem with respect to forgetting to wear PPE. Appx245 at 46:21-47:1. It was ***highly unusual*** for Appellee to issue a warning for one (1) single instance of forgetting to wear PPE. Appx341 at 49:6-11; Appx351-352 at 32:2-33:5.

On November 16, 2020, Jared Houseknecht ("Houseknecht"), Dispatcher, sent an email to Appellant assigning him to escort a crane the following day back from Syracuse, New York. Appx189 at 40:9-18; Appx350 at 28:13-22 ; Appx352 at 34-35. The assignment would have required Appellant to drive approximately a three (3) to three (3) and a half hour to Syracuse and make a return trip of approximately five (5) to six (6) hours' drive back to the Pennsylvania yard, totaling to a minimum of eight hours driving. Appx353 at 35:16-36:2.

In response thereto, Appellant notified Houseknecht he could not perform the November 17, 2020 assignment due to his injury because he was unable to sit for such a long period of time. Appx189 at 41:16-25. Appellant further notified

Houseknecht that instead, he could work on November 17, 2020 in the yard performing light duty assignments. Appx190-191 at 42:1-13 and 46:1-10.

Appellant also spoke with another dispatcher RJ (last name unknown) ("RJ") by phone and notified him that the November 17, 2020 crane escort assignment would inflame his back if he sat for the duration of the assignment. Appx190 at 42:16-43:3. Houseknecht admitted that he did not ask Appellant whether said assignment was within Appellant's light-duty accommodation. Appx196 at 69:3-14.

In the Court below, Appellant contended was not an undue burden to accommodate him in this request for a light-duty yard assignment as it took Houseknecht less than one (1) hour to find a solution for the crane escort on November 17, 2020. Appx312 at 43:1-14.

The following day, on November 17, 2020, Houseknecht verbally communicated to Bonislawski that Appellant did not report to work, despite the fact that he offered to perform light-duty yard work on said date. Appx189-190 at 41:16-25, 42:1-13; Appx312 at 44:7-24. Houseknecht failed to assign Appellant a light duty assignment for November 17, 2020. Appx190 at 42:1-13. As a result of Houseknecht's failure, Appellant did not report to work on November 17, 2020. Appx196 at 68:22-69:3.

**<u>Just one (1) day</u>** after Appellant advised he could not escort said crane ***<u>minimum</u>*** of eight (8) hours due to his back injury and/or disability and/or record of

impairment and light duty accommodations thereof, Bonislawski unlawfully terminated his employment. Appx189-190 at 38:16-25, 40:9-18, 41:16-25, 42:1-13; Appx212; Appx243 at 39:5-7; Appx250 at 66:14-17; Appx310 at 35:16-36:2. Bonislawski was the sole decisionmaker in terminating Appellant's employment. Appx250 at 66:14-21.

In terminating Appellant's employment for requesting a reasonable accommodation for his workplace injury and/or disability and/or record of impairment, Appellee failed to accommodate him and retaliated against him for the same. Appx189-190 at 38:16-25, 40:9-18, 41:16-25, 42:1-13; Appx212; Appx243 at 39:5-7 ; Appx250 at 66:14-17; Appx310 at 35:16-36:2. Appellee also terminated Appellant because it knew/should have known and/or suspected that Appellant was going to file a workers' compensation claim. Appx188 at 35:12-23, 36:2-10, 36:23-37:8. Appellant attempted to voice such retaliation concerns with Ungard directly after his termination, however, Ungard failed to even record Appellant's report and investigate the same. Appx351-352 at 29:2-30:2 and 36:5-10.

There was ample evidence of pretext cited by Appellant in the dispositive motion briefing below. Appx171-172. However, because the Court did not reach that issue, Appellant focuses on whether a *prima facie* case was established.

## VI.  __ARGUMENT__

The judgment of district court granting summary judgment to the Appellee should be reversed for the reasons set forth herein.

### a. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 288 (3d Cir. 2018). Accordingly, summary judgment is only appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Moreover, "all facts should be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor." Jutrowski, 904 F.3d at 288. A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### b. The District Court Unquestionably Misapplied __Macfarlan__ and Other Applicable Law to Appellant's Prima Facie Case under the ADA/PHRA

In Section C (1) of its opinion, the district court addressed the *prima facie* case for disability discrimination under the ADA and PHRA coextensively.[1] The

---

[1] On appeal, Appellant does not contest that these statutes are generally construed coextensively for purposes of evaluating a dispositive motion. *See e.g.* Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010). The court analyzed the claims in this manner in its opinion. ECF Doc. 48 at *10, n.57. Appellant also

district court acknowledged this is not intended to be an onerous exercise, but

nevertheless concluded Appellant failed to establish the presence of an "actual" or

"perceived" disability within the meaning of the ADA and PHRA. This is clear

legal error.

Under the ADA, a person is disabled if he or she has (A) a physical or

mental impairment that substantially limits one or more major life activities; (B) a

record of such an impairment; or (C) is regarded as having such an impairment. 42

USC § 12102(1) In 2008, Congress amended the ADA with the ADA Amendments

Act ("ADAAA"). In doing so, "Congress directed courts to interpret the term

'disability' broadly to the maximum extent permitted by the statute's terms. Thomas

at *10 (internal quotations omitted) (*citing* Ostrowski v. Con-Way Freight, Inc.,

543 F. App'x 128, 131 (3d Cir. 2013)).

In Thomas, the district court observed that this Court "not yet interpreted the

ADAAA's effect on short-term-disability-based claims", but also pointed out that

this Court recognized in Matthews v. Pa. Dep't of Corrections, 613 F. App'x 163,

167 (3d Cir. 2015) that "updated EEOC regulations under the amended ADA

provide that impairments lasting fewer than six months **may be substantially**

---

notes that Appellee never raised any objection to this interpretation in the court
below.

**limiting**." Thomas at *11 (**emphasis added**) (*citing* Matthews 613 F. App'x at 167-168).

The Thomas court was confronted with this Court's precedential opinion in Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266 (3d Cir. 2012) (which was also relied upon by the court below). The employer in Thomas relied on Macfarlan too, but these arguments were soundly rejected by the district court:

> ….Several factors, however, suggest that Macfarlan was an **intentional application of the pre-amendment ADA standard and that, therefore, it is inapposite here**. For one, Macfarlan evaluated a disability claim based on an impairment and adverse employment action that **predated the implementation of the ADAAA**—indeed, despite its 2012 publication date, Macfarlan's ADA analysis makes no mention of the amended act and exclusively references **pre-amendment caselaw**. In addition, a Third Circuit panel observed in 2015—three years after Macfarlan—that the Third Circuit had "not yet interpreted the ADAAA's effect on short-term-disability-based claims." Matthews, 613 F. App'x at 168. Finally, Macfarlan would seem to **directly contradict the explicit language of the updated EEOC regulations**. In light of these strong indicators that Macfarlan was not an interpretation of the amended statute, this Court declines to apply Macfarlan's categorical rejection of "temporary, non-chronic impairment[s] of short duration" to the claim *sub judice*. Therefore, to the extent that Defendant asserts that Plaintiff was per se not disabled under the amended ADA because of her impairment's short duration, such argument fails.

Thomas at *11-*12 (**emphasis added**) (*citing* Summers v. Altarum Inst., Corp., 740 F.3d 325, 333 (4th Cir. 2014) ("Under the ADAAA and its implementing regulations, an impairment is not categorically excluded from being a disability simply because it is temporary.").

In its opinion, the district court considered 1.) whether Appellant adequately established an "actual" disability as a result of a bulged or herniated disc and 2.)

whether Appellant adequately established an "actual" disability on the basis of generalized back pain. Appx013-019. The court below also determined that Appellant could not be "regarded as" disabled either. Appx019-022. Appellant will address each of these in turn.

>    **i.   *The "Actual" Disability Prong was Easily Satisfied with Respect to Appellant's Claim of a Bulged / Herniated Disc***

Appellant first addresses the court's ruling below that he was not "disabled" because of an alleged lack of medical evidence as to his bulged / herniated disc. Notwithstanding precedent (that even the court below acknowledged) stating a plaintiff need **not** present medical evidence to substantiate an impairment, the district court found Appellant was required to do so in this case.

This Court has in the past ruled that medical testimony is **not** necessary to establish a disability even in a **pre-2008 ADA amendments case**. Marinelli v. City of Erie, 216 F.3d 354, 360 (3d Cir. 2000). Marinelli effectively held that, *within the confines of the pre-2008 amendments to the ADA*, the necessity of medical testimony in an ADA case turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge. Marinelli, 216 F. 3d at 360.  This was the same standard that the district court applied in its opinion. Appx015.

As the court below recognized, but attempted to distinguish, some courts that have been confronted with this issue have held that even seriously complex

mental health "disabilities" do not require medical evidence for summary judgment purposes. For example, in Nagle v. Comprehensive Women's Health Servs., P.C., 2018 U.S. Dist. LEXIS 9722, at *41 (M.D. Pa. Jan. 19, 2018), the Middle District of Pennsylvania applying Marinelli found that a plaintiff was not required "produce evidence or testimony from a professional mental health treating source attesting to the plaintiff's diagnosis with anxiety or PTSD to get past summary judgment." Nagle at *41. The Nagle court also observed in a footnote that "Marinelli pre-dated enactment of the ADAAA, which had the effect of making it easier for plaintiffs to bring discrimination claims, and which, as explained above, provided that answering the question of whether a plaintiff had a disability should not demand extensive analysis." Id. at n.5.

In Pallatto v. Westmorland Cty. Children's Bureau, 2014 U.S. Dist. LEXIS 27008, at *30 (W.D. Pa. Mar. 3, 2014), a plaintiff made an ADA and FMLA claim based on difficulties connected to migraine headaches and sleep apnea. Ultimately, the plaintiff testified that she was diagnosed with lupus because of those symptoms. Pallatto at *30-*31. The district court, citing Marinelli, noted medical evidence was not required to establish a disability. Id. The court there found the plaintiff's FMLA application, deposition testimony and 2009 lupus diagnosis sufficient to establish a "disability" over the employer's objection. Id.  The court also made the following observation:

Defendant alludes to the proposition that lupus is a **technical medical disease** that is not amenable to the understanding of a lay jury. Nevertheless, the **symptoms of the disease are things many people struggle with from time to time**. **Thus, the production of medical evidence beyond what is already in the record is not required**. In short, plaintiff has produced medical evidence that shows she was suffering from a substantial impairment in 2008 and in 2009 these symptoms were officially diagnosed as the manifestations of lupus. Because a reasonable jury could find that plaintiff suffered from a substantial impairment there is a genuine issue of material fact as to whether she was disabled under the ADA.

Id. (**emphasis added**).

In Malzberg v. N.Y. Univ., 2022 U.S. Dist. LEXIS 54375, at *32-33 (S.D.N.Y. Mar. 25, 2022), the Southern District of New York was tasked with deciding whether a bulging disc is a "disability" within the meaning of the ADA. Malzberg at *32-*33. The district court answered this question in the affirmative. In that case, the plaintiff produced MRI records and some physician notes. Id. However, the district court went somewhat out of its way to observe that, at least in the Second Circuit, "…the ADA **does not** require medical evidence to establish a genuine dispute of material fact regarding the impairment of a major life activity at the summary judgment stage." Id. (**emphasis added**) (citing Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 43 (2d Cir. 2015); Mazzocchi v. Windsor Owners Corp., 204 F. Supp. 3d 583, 609 (S.D.N.Y. 2016)). The Malzberg court also made this thoughtful observation:

> Not every individual who has a disability—an impairment that substantially limits a major life activity—can afford to or does obtain

medical care. Thus, while, conclusory declarations are insufficient to raise a question of material fact, **non-medical evidence that conveys, in detail, the substantially limiting nature of an impairment may be sufficient to survive summary judgment**. Additionally, the EEOC regulations provide that, as part of the substantial-limitation inquiry, the comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population **usually will not require scientific, medical, or statistical analysis**.

Id. *35-*36 (**emphasis added**) (internal citations and quotations omitted).

PTSD, anxiety, other mental health disorders and lupus are infinitely more complex and arguably much more difficult for a lay person to comprehend in comparison to a back injury. Yet, in this case, the court below concluded it could not "…locate a case holding that spinal impairments such as a bulged or herniated disk are within the comprehension of a lay jury." Appx016. The court below acknowledged these are "fairly common" injuries and that "**a lay person may even be able to understand at a basic level how such an impairment could be limiting**." Id. (**emphasis added**). But it went on to conclude that "absent medical testimony or diagnostic tests no lay person could reasonably conclude that an individual actually suffers from a bulged or herniated disc nor, absent such evidence, would a jury understand the severity of the ailment and its possible limiting effects." Id.

With the utmost respect to the district court, this is clearly legal error. If

Marinelli is still good law[2], even an application of it to the facts of this case

commanded a different result.

For example, Appellant testified that he followed his chiropractor's

treatment plan by reporting for medical treatment two (2) days per week due to his

severe lower back pain. Appx187 at 33:7-18; Appx293-294. Appellant also

testified he experienced difficulties and pain when turning his body, sitting, and

walking. Id.  He further testified that the November 17, 2020, crane escort

assignment would inflame his back if he sat for the duration of the assignment.

Appx190 at 42:16-43:3.

Coupled with the note(s) from his chiropractor, this was more than sufficient

at the summary judgment stage to conclude Mr. Morgan had a "disability" under

the relaxed standards of the 2008 amendments. Appx339 ; Appx341; Appx386 ;

And, again, it is worth pointing out that even the court below acknowledged that a

lay person could understand "at a basic level" how a bulged or herniated disc could

be "substantially limiting". As the Eastern District of Pennsylvania recently

observed "[a] key element of Congress' intent in drafting the law was to correct the

prevailing judicial interpretation of what constituted impairment which

---

[2] The Nagle court seemed to imply that Marinelli is no longer good law in light of
the amendments to the ADA. Nagle at n.5.

'substantially limits' major life activities under § 12102(1)(A). Congress believed the interpretation had become too narrow and created an inappropriately high level of limitation necessary to obtain coverage under the ADA." Donnelly v. Capital Vision Servs., 2021 U.S. Dist. LEXIS 144645, at *11 (E.D. Pa. Aug. 2, 2021).

A reasonable lay juror would have very little problem understanding that a bulged or herniated disc adversely impacted Appellant's body, his ability to sit, and his ability to walk--- all of which are explicitly defined as major lift activities under the ADA. It would make very little sense to allow a plaintiff to claim PTSD or anxiety as an "actual" disability without medical evidence[3], but not something more relatable to most reasonable jurors such as associated restrictions from a bulged or herniated disc. It is akin in relatable terms to a knee injury, a broken bone, a fractured hand, etc. If ruling below is permitted to stand, the Third Circuit will be at odds with sister circuits.

Many other decisions from circuits have concluded that a plaintiff is ***not*** required to produce medical evidence to substantiate an ADA claim. *See e.g.* Katz v. City Metal Co., 87 F.3d 26, 32 (1st Cir. 1996); EEOC v. AutoZone, Inc., 630

---

[3] For example, the National Institute of Mental Health defines PTSD as a disorder that develops in some people who have experienced a shocking, scary, or dangerous event. *See https://www.nimh.nih.gov/health/topics/post-traumatic-stress-disorder-ptsd* (Accessed August 28, 2023). The range of symptoms is expansive and can range from being easily startled to *inter alia* having feelings of isolation. Id.

F.3d 635, 643 (7th Cir. 2010); <u>Tesone v. Empire Mktg. Strategies</u>, 942 F.3d 979, 997 (10th Cir. 2019). In fact, in <u>Mancini v. City of Providence</u>, 909 F.3d 32, 42 (1st Cir. 2018), the First Circuit concluded that a knee injury was a "disability" where medical evidence was not required and reversed the lower court's order granting summary judgment. In <u>Mancini</u>, the First Circuit specifically considered and relied on, *inter alia*, this Court's holding in <u>Marinelli</u>. <u>Mancini</u>, 909 F.3d at 42 ("So, too, the Third Circuit determined that a plaintiff's failure to present medical evidence of his impairment was not fatal because arm and neck pain are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury.) (internal quotations omitted) (*citing* <u>Marinelli</u>, 216 F.3d at 361).

Even if medical evidence was required, the district court also erred in determining that the chiropractor's notes were hearsay. The district court relied on <u>FOP v. City of Camden</u>, 842 F.3d 231 (3d Cir. 2016) for this contention. Appx015 at n.62. Essentially, the district court concluded that a deposition or declaration of the chiropractor was necessary to survive summary judgment. <u>Id</u>. This is a misinterpretation of precedent. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); <u>Shelton v. Univ. of Med. & Dentistry of N.J.</u>, 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a

motion for summary judgment if they are capable of admission at trial."). This Court never concluded in <u>FOP v. Camden</u> that a party **must** note the availability of a witness to testify for a district court to consider the evidence on a dispositive motion. This Court only concluded that a party needs to "explain the admissible form that is anticipated." <u>Id</u>. at 238. In fact, this Court also made the following observation in that case: "Here, Plaintiffs identified the third-party declarants, and **<u>nothing suggests that those declarants would be unavailable to testify at trial</u>**. **<u>That is all that was required</u>** to survive that aspect of Defendants' motion for summary judgment." <u>Id</u>. at 239 (**emphasis added**) (*citing* <u>Blackburn v. United Parcel Serv., Inc.</u>, 179 F.3d 81, 102 (3d Cir. 1999) ("We will **assume** that Blackburn's testimony regarding what Zileski told him was effectively a proffer of the testimony that Zileski himself would give at trial, and we therefore treat this as evidence capable of being admitted at trial.") (**emphasis added**); <u>J.F. Feeser, Inc. v. Serv-A-Portion, Inc.</u>, 909 F.2d 1524, 1542 (3d Cir. 1990) ("[T]here is no indication that Spagnola's salesforce would be unavailable to testify at trial. [Thus t]he averments of Spagnola's affidavit are capable of proof through admissible evidence.").

There is simply no record evidence that Appellant's chiropractor would have been unavailable or unable to testify at trial as to any treating diagnosis. *See e.g.* <u>Koeppel v. Bassett</u>, 2015 U.S. Dist. LEXIS 18841, at *21 (D.N.J. Feb. 17, 2015)

("A treating physician, although obviously possessed of expertise, may be a **fact witness** as to matters learned and observed in the course of treating the patient.")[4]

For these reasons, the district court erred in concluding that Appellant could not establish a "disability" under the ADA with respect to his bulged / herniated disc.

### ii.   *The District Court Also Erred in Determining that Generalized Back Pain was Not an "Actual" Disability*

Applying much of the same law above, the district court also erred in determining that Appellant could not rely on "generalized" back pain to establish a disability under the ADA.

After concluding that Appellant required medical evidence for a bulging / herniated disc, it stated the possibility was still open that Appellant could "…proceed with claims based on his alleged generalized back pain, as no medical evidence is required to establish back pain as an impairment." Appx017. It was undisputed in the court below that Appellant's chiropractor placed bending and lifting restrictions on Appellant. Id. The district court also recognized that because the back pain impacted "lifting" and "bending" as major life activities, it could be sufficient to constitute an impairment under the ADA and PHRA. Id.

---

[4] These arguments apply equally to any other claim that would have been dependent on medical evidence if the Court were to determine the same was necessary.

However, the district court then relied on <u>Macfarlan</u> again to conclude that Appellant's back pain was a mere "temporary non chronic impairment of short duration" insufficient to warrant the protections of the ADA and PHRA. As stated above, <u>Macfarlan</u> was a clear misapplication of the pre-2008 amendments to the ADA. While non-binding, this Court noted in <u>Matthews</u> 613 F. App'x at 167-168 that …"updated EEOC regulations under the amended ADA provide that impairments lasting fewer than six months **may be substantially limiting**."

This distinction was also recognized by the Western District of Pennsylvania in <u>Burbach v. Arconic Corp.</u>, 561 F. Supp. 3d 508, 519 (W.D. Pa. 2021). Citing both <u>Matthews</u> and <u>Thomas</u>, the district court observed "…that a duration of an impairment alone is **not** determinative of whether it constitutes a disability and constitutes only one factor to consider, that a court must perform an individualized assessment of the effect of the impairment on the plaintiff's life and noted whether the plaintiff was in fact disabled is not a question we can answer on a motion to dismiss." <u>Burbach</u>, 561 F.Supp. 3d at 519 (internal quotations omitted).

The growing trend amongst most circuits is that short-term impairments **may be covered by the ADAAA** even if they were not under prior to the pre-2008 amendments. *See e.g.* <u>Hamilton v. Westchester Cnty.</u>, 3 F.4th 86, 92-94 (2d Cir. 2021) (joining other circuits in recognizing that the ADAAA overrode previous case law indicating that temporary impairments could not qualify as disabilities

under the ADA); <u>Summers v. Altarum Inst., Corp.</u>, 740 F.3d 325, 330 (4th Cir. 2014) (noting that while the district court's ruling that an injury was not a disability because it was "temporary" was "entirely reasonable" under prior case law, the plaintiff nonetheless "unquestionably alleged a 'disability' under the ADAAA"). In <u>Shields v. Credit One Bank, N.A.</u>, 32 F.4th 1218 (9th Cir. 2022), the Ninth Circuit reached that conclusion when a plaintiff claimed a disability following a cancer biopsy. The plaintiff claimed that following a bone cancer biopsy, she had postsurgical problems in her arm and shoulder that impacted major life activities. <u>Shields</u>, 32 F.4th at 1220. The district court dismissed her case finding, *inter alia*, that she could not allege any permanent or long-term effects for her impairment on a Rule 12(b)(6) motion.

The Ninth Circuit reversed, finding that the 2008 amendments to the ADA and an application of the 2011 amendments to relevant EEOC regulations commanded a different result. Relevant here, the Ninth Circuit found as follows:

> As noted earlier, the ADA contains three alternative definitions of "disability"—i.e., (1) substantially limiting impairments, (2) a record of such an impairment, and (3) being regarded as having such an impairment"—and the ADAAA amended only the third of those three alternatives, which is contained in § 3(1)(C) of the ADA. Specifically, the ADAAA added, inter alia, the following limitation on this third "regarded as" alternative definition of disability: Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment *with an actual or expected duration of 6 months or less*. **The fact that Congress added such a "transitory and minor" limitation only to the "regarded as" alternative in § 3(1)(C) and not in the other two alternative definitions of "disability" strongly confirms that no**

> **such temporal limitation applies to those other two alternatives.** The EEOC's regulation recognizes this statutory distinction by expressly providing that the six-month "transitory and minor limitation applies only to the "regarded as" prong of the definition of disability and "does not apply to the definition of 'disability' under paragraphs (g)(1)(i) (the 'actual disability' prong) or (g)(1)(ii) (the 'record of' prong) of this section.

Id. at 1224-1225 (*emphasis in the original*) (**emphasis added**) (internal citations and quotations omitted).

For these reasons, the district court clearly erred in determining that Appellant's generalized back pain did not constitute a "disability" within the meaning of the ADA/PHRA.

### iii.    *Appellant Could Also Establish a "Regarded As" Claim*

The district court recognized that even if Appellant could not establish that he was "disabled", he could nevertheless potentially establish a *prima facie* case by showing that he was "regarded as" disabled by the Appellee.

As this Court has observed, "…the 'regarded as' prong—[s]ince its amendment in 2008, the ADA has further explained that an individual is 'regarded as' disabled when 'the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment **whether or not the impairment limits or is perceived to limit a major life activity**." Hanafy v. Hill Int'l, Inc., No. 22-878, 2023 U.S. Dist. LEXIS 68170, at *17 (E.D. Pa. Apr. 19, 2023) (**emphasis**

**added**) (*citing* Lackey v. Heart of Lancaster Reg'l Med. Ctr., 704 F. App'x 41, 48 (3d Cir. 2017)).

This Court recently addressed "regarded as" claims in Eshleman v. Patrick Indus., 961 F.3d 242 (3d Cir. 2020). In Eshelman, this Court observed that "… if the perceived disability is "transitory and minor," a plaintiff cannot state a "regarded as" discrimination claim." Eshelman, 961 F.3d at 246. These are separate and distinct inquiries insofar as the ADA defines "transitory" but does not define "minor". Id. at 248. The ADA defines "transitory" "an impairment with an actual or expected duration of 6 months or less" but offers no clear definition for "minor". Id. at 246.

In Eshelman, this Court specifically addressed EEOC interpretative guidance on a hypothetical employee who had a back injury:

> For example, an individual who is denied a promotion because he has a minor back injury would be "regarded as" an individual with a disability if the back impairment lasted or was expected to last more than six months. Although minor, the impairment is not transitory.

Id. at 248 (*citing* Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App. (2016)).

This Court therefore recognized that the converse must also be true: "…an impairment that is transitory because it lasts less than six months **but is objectively non-minor must also fall outside the "transitory and minor" exception**." Id. (**emphasis added**).

In its opinion, the court below effectively concluded that Appellant's injury was transitory **and** minor. Appx020-021. Because each element requires an independent analysis, they will be addressed separately.

By the EEOC's own definition and this Court's recognition of the same in Eshelman, Appellant's injury could not be said on the record to have been "transitory". Eshelman, 961 F.3d at 248. Appellant had a back injury with an indefinite timeframe for resolution. He also testified credibly that he was concerned about future flare-ups from the same. The district court concluded the injury was "transitory" because Appellant "…was placed under lifting restrictions for only 48 days, well below the six-month cutoff for a transitory impairment, and there is no indication that Allison Crane believed the restrictions would last for an extended duration." Appx020-021. The plain definition of "transitory" is an "**actual or expected** duration of 6 months or less" and here the district court placed *too much* emphasis on the "actual" duration articulated by the chiropractor's notes and *not enough* on Appellant's actual testimony about his back injury that would trigger the "expected" language. During his deposition, Appellant testified:

> **Q. Let me just reask the question. Do you feel that you have fully recovered from the back injury that you suffered?**
>
> **A. I—I wouldn't--I—in a way I do, but in a way I don't. Because there is always <u>that probable movement again that could reinflame that pulled disk</u>. I mean, <u>I think it's always going to be there for the rest of my life</u>, but at this point in time with the current work situation and the**

**living situation I am doing, it is not hurting me. But I could very easily walk out my door and slip on the ice and my injury's back.**

Appx057 at 59:16-60:3 (**emphasis added**).

Whether an impairment is "minor" is addressed on a case-by-case basis. Eshelman, 961 F.3d at 249. While there is no hard and fast test, at a minimum the Court did not grant appropriate weight to Appellant's symptoms, his testimony about the same, the risks involved to him continuing to work and/or Appellant's longer term health outlook for purposes of a dispositive motion. Id.[5] "Minor" was not defined by Congress, but even this Court recognized in Eshelman that the ADAAA's language was "…intended to weed out only claims at the lowest end of the spectrum of severity, such as common ailments like the cold or flu, and that the exception should be construed narrowly." Id. (internal quotations and citations omitted). Appellant's injury here certainly does not fall into the "lowest end of the spectrum of severity" or anything close to it.

On the summary judgment record, there was sufficient evidence that Appellant expected a longer-term problem with his back exceeding six ("6") months. It matters not that he was back to work. He very clearly testified that he had longer term concerns about inflaming it with probable movements. The law

---

[5] In fact, the district court appeared to give no weight to Appellant's testimony and instead relied solely on the short-term restrictions imposed by the chiropractor and Appellee's alleged perception of his injury.

encourages employees to return to work as quickly and safely as possible at every turn. What ultimately matters on a "regarded as" claim is the employer's perception of the employee, whether the impairment was "non-minor" and whether it could reasonably be "expected" to last more than six months. A reasonable jury in this case could have concluded that Appellee regarded Appellant as disabled because of his injury.

For these reasons, the district court erred in concluding the injury was both transitory <u>and</u> minor for purposes of evaluating an ADA/PHRA "regarded as" claim.

### iv.    *The District Court Incorrectly Analyzed Appellant's Failure to Accommodate Claim*

The district court acknowledged that Appellant was making a failure to accommodate claim in its opinion (which differs from a disparate treatment claim). Appx007. However, that is where the analysis stopped, and it seems as if the district court concluded a failure to accommodate claim could not survive considering its ruling on the disability prong of a *prima facie* case or lumped it into the <u>McDonnell Douglas</u> burden shifting framework for the disparate treatment claim.

As the Eastern District of Pennsylvania very recently observed, failure to accommodate claims are **not** analyzed under a <u>McDonnell Douglas</u> burden shifting framework. <u>Hanafy</u>, 2023 U.S. Dist. LEXIS 68170, at *15 ("The Third Circuit

appears not to have directly addressed the issue of whether and to what extent

failure to accommodate claims are subject to the <u>McDonnell Douglas</u> framework

but has affirmed a district court decision concluding that failure to accommodate

claims under the ADA were not subject to the framework") (*citing* <u>Walton v.

Mental Health Ass'n. of Se. Pa.</u>, 168 F.3d 661 (3d Cir. 1999)). Under the ADA, an

employer has a "duty to engage, in good faith, in an 'interactive process' with the

employee as part of the accommodation process." <u>Hanafy</u> at *20-*21 (*citing* <u>Reifer

v. Colonial Intermediate Unit 20</u>, 462 F. Supp.2d 621, 634 (M.D. Pa. 2006);

<u>Williams v. Philadelphia Hous. Auth. Police Dep't</u>, 380 F.3d 751, 771 (3d Cir.

2004)).

To demonstrate that a defendant failed to engage in the interactive process in

good faith, a plaintiff must show that 1.) a defendant knew about his disability; 2)

he requested accommodations or assistance for his disability; 3) the defendant did

not make a good faith effort to assist him in seeking accommodations; and 4) the

plaintiff could have been reasonably accommodated but for a defendant's lack of

good faith. <u>Hanafy</u> at *21 (*citing* <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296,

319-320 (3d Cir. 1999)).

In <u>Ruggiero v. Mount Nittany Med. Ctr.</u>, 736 F. App'x 35, 40-41 (3d Cir.

2018), this Court implied in an unpublished opinion that a person must have a

"disability" within the meaning of the ADA to pursue a failure to accommodate

claim. Assuming *arguendo* that to be the case, Appellant's failure to accommodate claim should have survived the dispositive motion.

First, for the reasons set forth above, Appellant submits had a "disability" within the meaning of the ADA/PHRA or was regarded as having the same.

Second, assuming this Court agrees, there was ample evidence in the record demonstrating that Appellee abjectly failed to engage in the interactive process in good faith at numerous turns—particularly when he indicated he could not do the crane assignment because the long drive would have inflamed his back pain. Appx131-134. A jury should have rightfully been left to determine whether Appellee failed to accommodate Appellant and otherwise fairly engage in the required interactive process.

For these reasons, the district court erred in granting summary judgment as to Appellant's failure to accommodate claim.

### c. The District Court Also Erred in Dismissing Appellant's Common Law Claim for Wrongful Discharge

The district court erred in concluding that Appellant could not establish a *prima facie* case for Pennsylvania common law wrongful discharge. In its view, Appellant did not engage in protected activity. Specifically, the court recognized that there was zero dispute Appellant reported his work injury. However, the district court determined that Appellant was **also** required to express his intent to Appellee that he intended to seek workers' compensation benefits.  Appx023.

36

The Supreme Court of Pennsylvania recognizes an exception to the at-will employment doctrine, prohibiting employers from terminating employees who seek worker's compensation benefits. Shick v. Shirley, 552 Pa. 590, 716 A.2d 1231, 1233 (Pa. 1998). The Court in Shick, held that although the Workers' Compensation Act did not expressly discuss retaliatory discharge, a public policy exception does exist. Id. at 1236-37.

Several district courts have concluded that to state a cause of action for workers' compensation retaliation, an employee must establish that (1) he engaged in protected activity; (2) he suffered an adverse employment action after or contemporaneous with the protected activity and (3) a causal connection exits between his protected activity and the employer's adverse action. See e.g. Smith v. R.R. Donnelley and Sons Co., 2011 WL 4346340, at *3 (E.D. Pa. Sept. 16, 2011). In the absence of direct evidence of retaliation, a plaintiff may establish a prima facie case of employment discrimination indirectly, then following the shifting burden analysis set forth by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). Smith correctly reasoned that limiting a cause of action to only those who filed a claim "would frustrate the Act by giving employers a window to escape liability by beating an injured employee to the punch." Smith at *19-*20.

Relying on a previous opinion issued by the same district judge, the district court concluded that expressing a specific intent to file a workers' compensation claim is a critical element and one that was ultimately fatal to Appellant's claim. Bamat v. Glenn O. Hawbaker, Inc., No. 4:18-CV-01898, 2019 U.S. Dist. LEXIS 125087, at *6 (M.D. Pa. July 26, 2019).

It perhaps goes without saying that Bamat is not binding precedent. Smith also analyzed similar issues and predicted back in 2011 that Supreme Court of Pennsylvania would extend anti-retaliation protections "…to injured employees who have expressed their intent to pursue workers compensation claims." Smith at *18. The following passage from Smith is enlightening here:

> To be clear, the Court reiterates that it is not merely the employer's awareness of the work-related injury that evidences the plaintiff engaged in protected activity. Rather, it is the reporting of the work-related injury in conjunction with the **employee's expression of intent to file a workers compensation claim that is enough to trigger the protection afforded by the Act**. This stands to reason because, without question, the internal reporting of a workplace injury to the employer is the **first step** in pursuing a workers' compensation remedy. A contrary conclusion limiting the definition of protected activity to only the filing of a claim would frustrate the Act by giving employers a window to escape liability by beating an injured employee to the punch. That is, an employer who had been notified that an employee has been injured on the job and **knows of the injured employee's intent to file a workers compensation claim**, if the employer is the first to act, may terminate the injured employee before that employee reasonably has the opportunity to actually the claim documents.
>
> This Court's decision recognizes the practicality of affording an injured employee who desires to seek workers compensation benefits the opportunity to complete the administrative task of filling out and filing

workers compensation paperwork, while ensuring that the window of time between the time of reporting and filing does not allow an employer to escape its responsibility under the WCA. This decision also aims to uphold the employer's right to operate its business as it sees fit, to maintain the limited nature of this exception to the at-will employment doctrine, and to avoid expanding the meaning of protected activity to include those instances where an employee is injured on the job **but has no intention of seeking workers' compensation benefits or otherwise invoking the protections of the WCA**.

Smith at *20-*21 (**emphasis added**).

Since Smith, other cases have considered the question of what may constitute "intent". Courts have rejected that a common law claim typically involve "mere awareness of the injury" cases. *See e.g.* LaRochelle v. Wilmac Corp., 210 F. Supp. 3d 658, 717 (E.D. Pa. 2016). However, this case is drastically different in its fact pattern. Here, Appellant was misled **by the employer** to believe that he should not exercise his workers' compensation rights. With respect to the district court, this salient fact was not given adequate weight. During his deposition, Appellant testified:

> **Q. And what happened at the time of that meeting?**
> **A. Um, I proceeded to tell them about my injury and that I was in severe pain, that I went out on my own to seek medical care.**
> **Q. What did they tell you at that point?**
> **A. Uh, I think at that point in time I was already on the weight restriction given to me by the chiropractor office. And they pretty much told me that there wasn't -- at that point in time it wasn't a Workman's Comp issue, that they would put me on light duty in the yard.**
> **Q. What do you mean they told you it was not a Workman's Comp issue?**

**A. They -- they pretty much were going every route to get me to not choose to take Workman's Comp.**
**Q. And what were they doing?**
**A. They were just -- I guess the way that they were -- were -- I don't know how to word it. The way they were saying things, they said they do not feel it was a severe injury, that it was not as severe as it was and that -- with my light duty restrictions, I could work. So they did not feel at that point in time that it wasn't a Workman's Comp related issue. Like I said, they were trying, in my eyes, to sway me away from doing a Workman's Comp claim.**

Appx188 at 35:7-36:10.

In that type of scenario, Appellant's "intent" should have been reasonably inferred even if he did not actually file for benefits. There were active discussions with the Appellee about Appellant's injury and the potential for workers' compensation relief.

The Third Circuit has recognized in many legal scenarios that intent may be inferred depending on the circumstantial evidence. *See e.g.* Bravman v. Bassett Furniture Indus., Inc., 552 F.2d 90 (3d Cir. 1977) (finding intent may be inferred by circumstantial evidence under the Sherman Act). But, more relevant here, courts have also been directed to look for an inference of intent when applying McDonnell Douglas to any type of discrimination case with an indirect theory of evidence. *See e.g.* Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 364 (3d Cir. 2008) ("Doe supports her claim with evidence from which discrimination may be inferred. We therefore use the familiar McDonnell Douglas burden-shifting framework to analyze her Title VII pregnancy discrimination claims.")

Here, the district court acknowledged that part of Appellant's allegations included the fact that the Appellee had actively discouraged him from filing a workers' compensation claim. Appx024 ("To be sure, Morgan alleges that Allison Crane discouraged him from filing a workers' compensation claim.") Yet, the district court stated that "[e]ven if one may logically infer from Allison Crane's behavior in actively discouraging Morgan from filing a claim that it (or rather, Morgan's supervisors) subjectively believed that Morgan may have desired to file a claim for workers' compensation, as this Court has previously made clear, such a subjective belief on the part of the employer is insufficient to establish that a plaintiff engaged in protected activity." Appx024-025.

With respect to the district court, this was ultimately a fact question that should have been resolved by a jury. The record clearly demonstrated that Bonislawski and Ungard specifically informed Appellant that **he did not qualify** for workers' compensation benefits even though his injury occurred at work. Appx191 at 49:8-12. Assuming this to be true, Appellee is effectively being rewarded for actively misleading Appellant about his Pennsylvania workers' compensation rights. That creates a perilous precedent allowing any employer to mislead an employee about their rights, only to disclaim knowledge of the employee's "intent" later if a wrongful discharge claim were to arise.

This is not a scenario where the employer was completely in the dark about whether an employee might seek workers' compensation relief. Appellant **undisputedly** reported his work injury and was **actively misled** by management (*and most importantly, the decisionmaker in this case*) when they said he was ineligible for benefits. Under these types of circumstances, a reasonable inference should have been drawn that Appellant had an intent to seek workers' compensation benefits **well known** to the Appellee.

For these reasons, this Court should reverse and remand as to Appellant's common law wrongful discharge claim.

### d. The District Court Erred in Dismissing Appellant's ADA/PHRA Retaliation Claims Because Appellee Never Moved for their Dismissal

There can be no dispute that Appellant properly pleaded retaliation claims both under the ADA and PHRA. Appx511-512. Count I contained the word "retaliation" in its heading and in Paragraph 51 of the pleading: "Plaintiff was terminated because of [1] his actual and/or perceived disabilities; [2] his record of impairment and/or [3] his requested accommodation(s), **which also constitutes unlawful retaliation.** Id. (**emphasis added**). The same was true for Count II, which was his PHRA claim at Paragraph 56. Id.

Appellee did not seek dismissal of the retaliation claims in its motion for summary judgment. Section (A) of its brief sought summary judgment on the

grounds that Appellant was 1.) not disabled, 2.) not regarded as disabled, 3.) did not have a record of impairment and 4.) was not **entitled to** a reasonable accommodation. *See e.g.* Appx093. In the context of addressing Appellant's reasonable accommodation claim, Appellee merely argued that it had no obligation to accommodate. Appx109-110. It did not address the issue of retaliation at all. <u>Id</u>.

It is well established that a failure to raise an issue in a dispositive motion brief constitutes waiver. *See e.g.* <u>West v. Dan Lepore & Sons Co.</u>, No. 17-1592, 2019 U.S. Dist. LEXIS 41702, 2019 WL 1227716, at *12 (E.D. Pa. Mar. 14, 2019) ("It is true "...[courts] both within and beyond the Third Circuit routinely have held an [undefended] claim at issue to have been abandoned."); <u>Glenn v. Raymour & Flanigan</u>, 832 F. Supp. 2d 539, 547 (E.D. Pa. 2011) ("failure to [mention] or address claims [in response to defendant's motion for summary judgment] waives opportunity to contest summary judgment on that ground."). In the court below, Appellee clearly waived its right to seek dismissal of the retaliation claims pursuant to Fed.R.Civ.P. 56.

However, Fed.R.Civ.P. 56(f)(2) requires a district court to give "notice" and a reasonable time to respond if it intends to grant summary judgment on grounds **not** raised by the party. Again, it is undisputed that Appellee failed to move for summary judgment on Mr. Morgan's retaliation claims under the ADA / PHRA.

Yet the district court granted summary judgment in its entirety. The Tenth Circuit

addressed this issue when reversing a district court in <u>Oldham v. O.K. Farms, Inc.</u>,

871 F.3d 1147 (10th Cir. 2017):

> The rules of civil procedure permit a district court to grant a summary
> judgment motion "on grounds not raised by a party," but only after giving
> notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). Thus,
> though we generally don't favor the granting of summary judgment *sua
> sponte*, a district court may do so if the losing party was on notice that
> she had to come forward with all of her evidence. Even if such notice is
> lacking, we will still affirm a grant of summary judgment if the losing
> party suffered no prejudice from the lack of notice. If such prejudice is
> shown, however, then we will reverse.

<u>Oldham</u>, 871 F.3d at 1150 (internal citations and quotations omitted).

This Court has seemingly applied more "relaxed" approach as to the

application of Rule 56(f)(2). *See e.g.* <u>Coba v. Ford Motor Co.</u>, 932 F.3d 114, 120

n.3 (3d Cir. 2019) (recognizing that a perhaps lacking reference to an argument in

briefing was sufficient to defeat Rule 56(f)(2) violation claim).  But the opinion

below makes it difficult to take that stance—particularly when the lower court did

not even address the retaliation claims. <u>Allstate Life Ins. Co. v. Stillwell</u>, 2019 U.S.

Dist. LEXIS 123213, at *6 (D.N.J. July 24, 2019) ("This is not the kind of situation

contemplated by Rule 56(f)(2) where a party had summary judgment sprung upon

it without the opportunity to argue its side of the case.")

The rule clearly contemplates a party having a fair opportunity to address

claims **<u>not raised by the movant</u>** if the Court is independently considering

granting a motion for summary judgment. It would be inherently prejudicial to force a non-moving party to respond to every conceivable and possible argument not raised by moving party. Rule 56(f)(2) exists for this exact type of scenario.

There is actual prejudice here. Appellant did not have a full and fair opportunity to address these issues because Appellee did not address them in its moving papers. The word "retaliation" does not appear once in its summary judgment briefing in the context of the ADA/PHRA.  While the record is the same for all claims, the application of the law to the facts differs for each. The common law claim applies virtually the same type of *prima facie* case standard, but what may constitute "protected activity" obviously varies as well as the inference of causation.

Establishing a *prima facie* case of illegal retaliation requires a showing of "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." <u>EEOC v. Allstate Ins. Co.</u>, 778 F.3d 444, 449 (3d Cir. 2015). If a *prima facie* case is established, the reviewing court proceeds with the familiar <u>McDonnell Douglas</u> burden shifting framework. However, and important in this context, a retaliation claim may still lie **<u>even if</u>** the employee is not "disabled." *See e.g.* <u>Mondzelewski v. Pathmark Stores, Inc.</u>, 162 F.3d 778, 786 (3d Cir. 1998) ("we see

no basis for holding that a person who is adjudged not to have a disability may not assert a retaliation claim based on some form of protected activity other than the filing of a formal complaint."); and <u>Selenke v. Med. Imaging of Colo.</u>, 248 F.3d 1249, 1264 (10th Cir. 2001) ("to prosecute an ADA retaliation claim for requesting reasonable accommodations, a plaintiff need not show that she suffers from an actual disability. . . . A reasonable, good faith belief that the statute has been violated suffices.").

The district court clearly found Appellant engaged in protected activity at least for purposes of notifying Appellee of his work injury. The record would also clearly support that Appellant engaged in ADA/PHRA protected activity by requesting accommodations for his injuries. Activity protected from retaliation under the ADA include not only bringing or participating in formal actions to enforce ADA rights, but also informal activity such as requesting an accommodation for a disability. <u>Shellenberger, v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 188 (3d Cir. 2003). Even the district court acknowledged that information existed in the record. Appx010-011. It was also undisputed that Appellee placed on light duty. <u>Id</u>. Assuming *arguendo* that Appellant engaged in protected activity, it is also beyond dispute that he suffered from an adverse employment action in that he was terminated from his employment.

The causal connection prong obviously was not analyzed by the district court relative to the ADA/PHRA retaliation claims. However, if the court below did engage in such an analysis, it would be hard to dispute that the temporal proximity between Appellant's termination and his injury / requested accommodations was highly suggestive of pretext. Courts have routinely found suggestive timing when the timeframe at issue between the protected activity and adverse action only spans a few months (or in this case even **one day**). *See e.g.* Fasold v. Justice, 409 F.3d 178, 189-90 (3d Cir. 2005) (three months enough for "temporal proximity" between employee's complaint and employer's decision); Martin v. Chester Charter Scholars Acad. Charter Sch., No. 20-2067, 2021 U.S. Dist. LEXIS 243373, at *20 (E.D. Pa. Dec. 21, 2021) ("Like with her discrimination claim, [plaintiff] starts with timing. She was fired within two months of returning from leave and two months of requesting additional accommodations. This timing is suggestive.")

There was also ample evidence in the record suggestive of pretext assuming *arguendo* Appellee advanced an alleged legitimate non-discriminatory reason for termination-- absenteeism. *See e.g.* Appx171-172. Again, the district court did not analyze the pretext prong. Thus, Appellant focuses here on why the district court erred in granting summary judgment relative to the *prima facie* case.

But, just by way of example, 1.) Bonislawski testified under oath that he never even looked at Appellant's previous disciplinary history prior to terminating him, 2.) other relevant comparators were not subjected to similar discipline, 3.) two of those comparators had a **multitude** of infractions prior to being terminated and 4.) Appellee deviated from its own absenteeism policy. <u>Id</u>.

There was abundantly sufficient evidence in the record to support a retaliation claim under the ADA/PHRA. For these reasons, this Court should reverse and remand for trial on the retaliation claims insofar as Appellee waived its right to move for dismissal pursuant to Fed.R.Civ.P. 56.

## VII.  <u>CONCLUSION</u>

For the reasons set forth above, the April 18, 2023, Order of the district court granting summary judgment to the Appellee should be reversed in its entirety and this case should be remanded for trial on the merits.

Respectfully submitted,

KARPF, KARPF & CERUTTI P.C.

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.

*Counsel for Appellant*

Dated: September 20, 2023

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that while this brief exceeds thirty ("30") pages, the body of the brief contains 10,914 words according to Microsoft Word's "word count" feature.

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.

*Counsel for Appellant*

Dated: September 20, 2023

## **CERTIFICATION OF BAR MEMBERSHIP**

I hereby certify that I am a member in good standing of the bar of the United

States Court of Appeals for the Third Circuit.

/s/ W. Charles Sipio
W. Charles Sipio, Esq.

*Counsel for Appellant*

Dated: September 20, 2023

## <u>CERTIFICATION OF VIRUS CHECK</u>

I hereby certify that this filing and the accompanying appendices were scanned for viruses using Internxt virus scanning software and no such viruses were found.

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.

*Counsel for Appellant*

Dated: September 20, 2023

## <u>CERTIFICATION OF IDENTICAL BRIEFS</u>

I hereby certify that the electronically filed version of this brief is identical

to those bound copies to be filed with the Clerk's Office.

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.

*Counsel for Appellant*

Dated: September 20, 2023

# <u>CERTIFICATION OF SERVICE</u>

I hereby certify that a true and correct copy of this brief was served upon

counsel for Appellee via this Court's CM/ECF system:

Paul S. Mazeski, Esq.
Buchanan Ingersoll & Rooney, P.C.
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.

*Counsel for Appellant*

Dated: September 20, 2023

## <u>TABLE OF CONTENTS FOR VOLUME I OF APPENDIX<br>(APPENDED TO BRIEF)</u>

**Notice of Appeal**…………………………………………………………Appx001

**April 18, 2023 Order of the District Court Granting Appellee's Motion for Summary Judgment**……………………………………………………Appx003

**Opinion of the District Court**………………………………………..Appx004

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ANDREW MORGAN**

    *Plaintiff,*

    vs.

**ALLISON CRANE & RIGGING LLC d/b/a ALLISON CRANE & RIGGING**

    *Defendant*

CIVIL ACTION

NO. 4:21-00533-MWB

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Plaintiff Andrew Morgan appeals to the United States Court of Appeals for the Third Circuit from the memorandum, final order and judgment of the District Court dated April 18, 2023, granting Defendant's Motion for Summary Judgment in its entirety (ECF Doc. 48, 49, 50).

    Respectfully submitted,

    KARPF KARPF & CERUTTI P.C.

    /s/ W. Charles Sipio
    W. Charles Sipio, Esq.
    3331 Street Road
    Two Greenwood Sq., Suite 128
    Bensalem, PA 19020
    (T) 215-639-0801

    *Attorneys for Plaintiff*

Dated: April 19, 2023

Case: 23-1747   Document: 10   Page: 61   Date Filed: 09/20/2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Notice of

Appeal was served upon all counsel of record via this Court's CM/ECF system.

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.

Dated: April 19, 2023

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW MORGAN,

    Plaintiff,

    v.

ALLISON CRANE & RIGGING LLC
*d/b/a Allison Crane & Rigging*,

    Defendant.

No. 4:21-CV-00533

(Chief Judge Brann)

## <u>ORDER</u>

### APRIL 18, 2023

In accordance with the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that:

1.    Defendant's motion for summary judgment (Doc. 34) is **GRANTED**;

2.    Final Judgment is entered in favor of Defendant and against Plaintiff; and

3.    The Clerk of Court is directed to **CLOSE** this case.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

Appx003

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW MORGAN,

    Plaintiff,

    v.

ALLISON CRANE & RIGGING LLC
*d/b/a Allison Crane & Rigging*,

    Defendant.

No. 4:21-CV-00533

(Chief Judge Brann)

## MEMORANDUM OPINION

### APRIL 18, 2023

Andrew Morgan, formerly an employee of Allison Crane & Rigging LLC ("Allison Crane"), was washing a wall in late 2020 while working in his capacity as an employee of Allison Crane. While twisting his body to perform that job, Morgan felt a "pop" in his back and experienced immediate back pain. He reported that pain to his employer, and later sought chiropractic treatment for his back pain; at the recommendation of Morgan's chiropractor, he was placed on light duty, although Morgan's chiropractor removed any bending or lifting restrictions after 48 days. Morgan was later terminated for allegedly failing to report for work, but Morgan asserts that he was actually terminated due to his back pain, as well as to prevent him from filing a workers' compensation claim. The evidence, however, fails to establish that Morgan's back pain was disabling, or that he ever reported to Allison

Crane an intent to file a workers' compensation claim. Accordingly, Morgan's claims cannot proceed to trial.

## I.     BACKGROUND

Morgan filed a complaint, which he later amended, against Allison Crane alleging that Allison Crane discriminated against him due to his actual or perceived disability, in violation of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), and wrongfully discharged Morgan to prevent him from filing a workers' compensation claim.[1] Allison Crane filed an answer to the amended complaint, and the matter proceeded through discovery.[2]

Allison Crane has now filed a motion for summary judgment.[3] Allison Crane first argues that it is entitled to summary judgment as to Morgan's ADA and PHRA claims because Morgan has failed to establish either that he was disabled, or that he was perceived as disabled.[4] Specifically, Allison Crane notes that, while Morgan asserts he suffered from a herniated or bulged disk in his back, he has produced no evidence—other than his own testimony—to substantiate any medical impairment.[5]

Furthermore, Morgan was only moderately limited in his ability to lift objects during a 48 day period, missed no work, sought no further treatment, and now suffers no limitations due to his back issues, all of which, Allison Crane asserts,

---

[1]    Doc. 13.
[2]    Doc. 14.
[3]    Doc. 34.
[4]    Doc. 36 at 12-19.
[5]    *Id.* at 12-14.

2

demonstrates the absence of any disability.[6] Allison Crane also argues that Morgan was not regarded as disabled, since the evidence demonstrates that Morgan's supervisors did not believe that the injury was serious or would qualify for short-term disability, and minor, transitory impairments do not satisfy the "regarded as" test.[7] Allison Crane additionally argues that Morgan was not entitled to a reasonable accommodation since he was not disabled.[8]

Second, Allison Crane argues that it is entitled to summary judgment as to Morgan's wrongful discharge claim.[9] In that regard, Allison Crane notes that Morgan never filed a workers' compensation claim, never asked anyone to file a workers' compensation claim, and never had a discussion with anyone about filing a workers' compensation claim on his behalf, meaning that he engaged in no protected activity.[10]

Morgan responds that he has established a *prima facie* case of disability discrimination under the ADA and PHRA.[11] Morgan contends that the evidence establishes that he was diagnosed with a bulged or herniated disk, was placed on light duty with lifting restrictions, and experienced limitations of his major life activities, all of which satisfy the requirements for disability.[12] Furthermore, even if

---

[6]   *Id.* at 14-16.
[7]   *Id.* at 16-18.
[8]   *Id.* at 18-19.
[9]   *Id.* at 19-20.
[10]   *Id.*
[11]   Doc. 40.
[12]   *Id.* at 11-14, 16-17.

**Appx006**

he were not disabled, Morgan asserts that there remains a genuine issue of material fact as to whether Allison Crane regarded him as disabled, such that he has still established a *prima facie* case of discrimination.[13] Specifically, Morgan contends that his supervisor knew of the workplace injury, knew of the lifting restrictions imposed on Morgan, and was the sole decisionmaker who terminated Morgan's employment.[14]

Morgan further argues that he was entitled to a reasonable accommodation due to his documented back injury, and that Allison Crane failed to provide such an accommodation by scheduling Morgan to drive a truck for eight or more hours, despite Morgan's insistence that he could not sit for such a long period of time.[15] Morgan also contends that Allison Crane has failed to set forth a legitimate non-discriminatory reason for his termination and, in any event, the evidence is sufficient to establish that any such explanation would be pretextual.[16]

Finally, Morgan argues that summary judgment should be denied as to his wrongful discharge claim.[17] Morgan asserts that, because he reported his injury, his supervisors were aware of that injury, and those supervisors discouraged Morgan

---

[13]   *Id.* at 14-17.
[14]   *Id.* at 16.
[15]   *Id.* at 18-21.
[16]   *Id.* at 21-23.
[17]   *Id.* at 23-27.

from filing a workers' compensation claim, he has sufficiently established that he engaged in protected activity.[18]

Allison Crane has filed a reply brief and Morgan has filed a sur reply brief, rendering this matter is ripe for disposition.[19] For the following reasons, the motion for summary judgment will be granted.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[21] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[22] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[23]

---

[18]  *Id.* at 27.
[19]  Docs. 43, 47.
[20]  Fed. R. Civ. P. 56(a).
[21]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[22]  *Clark*, 9 F.3d at 326.
[23]  *Id.*

Appx008

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[24] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[25] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[26] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[27]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[28] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[29] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[30]

---

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[26] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

[27] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (internal quotation marks omitted).

[28] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[29] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[30] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[31]

### B.    Undisputed Facts

In 2019 and 2020, Morgan was employed by Allison Crane as a Millwright Laborer.[32] During that employment, Morgan was supervised by, among others, Brian Bonislawski, who, by 2020, became the supervisor for Allison Crane's Williamsport, Pennsylvania location.[33] On September 29, 2020, Morgan injured his back while on the job.[34] Although Morgan completed his shift that day, he informed his coworkers and supervisor about the pain that he was experiencing.[35] Morgan continued to work for the remainder of the week, although he experienced pain and contemplated seeking medical treatment.[36]

Morgan states that, on October 1 or 2, 2020, he presented to a chiropractor who diagnosed Morgan with a bulged or herniated disk in the lower back.[37] No diagnostic testing confirmed the presence of a bulged or herniated disk, and Morgan did not seek medical treatment from anyone other than the chiropractor.[38] Morgan

---

[31]    Fed. R. Civ. P. 56(c)(3).
[32]    Doc. 35 ¶¶ 2, 12; Doc. 40-1 ¶ 2.
[33]    Doc. 35 ¶ 13; Doc. 40-1 ¶ 13.
[34]    Doc. 35 ¶¶ 16-18; Doc. 40-1 ¶¶ 16-18.
[35]    Doc. 35 ¶¶ 19-20; Doc. 40-1 ¶¶ 19-20.
[36]    Doc. 35 ¶¶ 21-22; Doc. 40-1 ¶¶ 21-22.
[37]    Doc. 35 ¶¶ 23-24; Doc. 40-1 ¶¶ 23-24.
[38]    Doc. 35 ¶¶ 26-27; Doc. 40-1 ¶¶ 26-27.

7

treated his injury through twice-weekly appointments with his chiropractor, but did not receive any prescription pain medication or surgery.[39]

On October 8, 2020 and again on October 22, 2020, Morgan's chiropractor wrote notes asking that, for a period of fourteen days, Allison Crane not require Morgan to do any bending or lifting of anything over fifteen pounds.[40] On November 5, 2020, the chiropractor wrote a note asking that Morgan be excused from bending or lifting anything over thirty pounds for the next thirty days.[41] Morgan provided these notes to his supervisors.[42]

On October 7, 2020, Morgan met with several supervisors and told those individuals that he was injured, that he was in pain, and that he was receiving medical care for his injury.[43] Morgan was informed that he would be placed on light duty at work but that there was no workers' compensation issue at that time.[44] Morgan's supervisors also stated that they did not believe that his injury was severe, that he could not file for unemployment, and that his injury did not qualify for short-term disability.[45]

Following his injury, Morgan researched how to open a workers' compensation claim, but did not discuss filing a workers' compensation claim with

---

[39] Doc. 35 ¶¶ 28-29; Doc. 40-1 ¶¶ 28-29.
[40] Doc. 35 ¶¶ 31-32.
[41] Doc. 35 ¶ 33.
[42] Doc. 35 ¶ 34; Doc. 40-1 ¶ 34.
[43] Doc. 35 ¶¶ 35-37; Doc. 40-1 ¶¶ 35-37.
[44] Doc. 35 ¶ 38; Doc. 40-1 ¶ 38.
[45] Doc. 35 ¶¶ 39-41; Doc. 40-1 ¶¶ 39-41.

8

anyone at Allison Crane.[46] Morgan was also informed by his supervisors that they did not believe the injury constituted a workers' compensation matter.[47] Morgan was thereafter put on light duty while working at Allison Crane and continued to work fulltime—at the same wage—without missing any work until November 17, 2020.[48] On November 13, 2020, Morgan was disciplined for allegedly not wearing appropriate protective equipment at work.[49]

On November 17, 2020, Morgan was assigned to drive a truck to escort a crane from a job site in Syracuse, New York.[50] Morgan informed the dispatcher through a series of text messages that he could not perform the task assigned to him because it would involve an eight- or ten-hour drive, and Morgan had a bank appointment that he did not wish to miss.[51] Morgan also stated in his deposition that he had spoken with another dispatcher over the phone and stated that he could not perform the assigned task because "that long of a trip would inflame my back and I could have severe pain, that I would not be able to sit for that long."[52] On November 18, 2020, Morgan's employment with Allison Crane was terminated by Bonislawski,

---

[46]  Doc. 35 ¶¶ 51-53; Doc. 40-1 ¶¶ 51-53.
[47]  Doc. 40-1 ¶ 31; Doc. 44 ¶ 31.
[48]  Doc. 35 ¶¶ 42-44; Doc. 40-1 ¶¶ 42-44.
[49]  Doc. 35 ¶ 45; Doc. 40-1 ¶ 45.
[50]  Doc. 35 ¶ 46; Doc. 40-1 ¶ 46.
[51]  Doc. 35 ¶ 46; Doc. 40-1 ¶ 46. *See* Doc. 40-16 at 2 (test message exchanges between Morgan and the dispatcher).
[52]  Doc. 40-4 at 13.

reportedly because Morgan failed to appear for his assigned job escorting the crane on November 17.[53]

Morgan's chiropractor removed any work restrictions related to the back injury on November 25, 2020.[54] Morgan has received no medical treatment for his back injury since that date, and he suffers no pain or limitations as a result of that injury, although he believes that it is possible that he could aggravate the injury in the future.[55] Morgan is currently employed by the Borough of Jersey Shore, Pennsylvania performing labor and maintenance, such as snow removal, grass cutting, and sidewalk work.[56]

## C.    Analysis

### 1.    Disability Discrimination Under the ADA and PHRA

The Court first addresses Morgan's claim of disability discrimination. While Morgan brings his claims under both the ADA and PHRA, it is well established that "the same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA" and, as such, it is proper to address both claims collectively.[57]

To demonstrate a *prima facie* case of disability discrimination under the ADA or PHRA, a plaintiff must establish three elements: "(1) s/he is a disabled person

---

[53]    Doc. 35 ¶¶ 48-49; Doc. 40-1 ¶¶ 48-49.
[54]    Doc. 35 ¶ 56; Doc. 40-1 ¶ 56.
[55]    Doc. 35 ¶¶ 57-60; Doc. 40-1 ¶¶ 57-60.
[56]    Doc. 35 ¶ 61; Doc. 40-1 ¶ 61.
[57]    *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.3 (3d Cir. 2010).

within the meaning of the ADA; (2) s/he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) s/he has suffered an otherwise adverse employment decision as a result of discrimination."[58] "For the purposes of the ADA, plaintiffs are disabled if they: (1) have a physical or mental impairment that substantially limits one or more of their major life activities; (2) have a record of such an impairment; or (3) are regarded as having such an impairment."[59]

Although "[t]he burden of establishing a *prima facie* case 'is not onerous,' . . . and presents a 'low bar' for employment-discrimination plaintiffs,"[60] the Court concludes that Morgan has not established the presence of an actual or perceived disability as required by the ADA and PHRA.

### a.    Actual Disability

The Court must first consider whether Morgan has adequately established the existence of an actual disability, either as a result or a bulged or herniated disk, or due to generalized back pain. As an initial matter, Morgan has failed to demonstrate the existence of a purported bulged or herniated disk in his back. Morgan points to a single piece of evidence in support of his assertion that he suffered from such an

---

[58]  *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (brackets and internal quotation marks omitted).

[59]  *Id.* (internal quotation marks omitted).

[60]  *Rice-Smith v. Misericordia Convalescent Home*, No. 1:20-CV-1473, 2022 WL 2231822, at *9 (M.D. Pa. June 21, 2022) (quoting *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006)).

injury—his own deposition testimony stating that his chiropractor had diagnosed him with "a bulged disk or a herniated disk in [his] lower back."[61] However, this recitation of what Morgan's chiropractor stated constitutes hearsay,[62] and the United States Court of Appeals for the Third Circuit has long held that "[h]earsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."[63] Absent any admissible evidence of a bulged or herniated disk, Morgan has not demonstrated that he suffered from such an impairment, let alone that said impairment rendered him disabled.

It is true, as Morgan points out, that the Third Circuit has previously held that a plaintiff need not present medical evidence to substantiate an impairment if "the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge" although, even in those circumstances, "a lack of medical testimony should be a factor cutting against a

---

[61] Doc. 40-4 at 10.

[62] This is an out-of-court statement and is clearly offered for the truth of the matter asserted—that Morgan was diagnosed with a disk injury, *See* Fed. R. Evid. 801(c) (defining hearsay), and no exception to the hearsay rule would appear to apply. Rule 804(4), related to statements made for medical treatment, would not apply since that Rule "only applies to a patient's statement made to a medical professional, rather than a medical professional's statement to a patient." *Plunkard v. Marks*, No. 1:18-CV-01536, 2021 WL 8013872, at *7 (M.D. Pa. May 4, 2021). Nor is there any evidence that the chiropractor's statement is "capable of being admissible at trial" such that it may be considered at the summary judgment stage. *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). No evidence whatsoever—such as a declaration or deposition testimony—has been presented from the chiropractor, nor has Morgan "noted [his chiropractor's] availability to testify" at trial. *Id.* As such, the Court concludes that this statement is inadmissible hearsay that may not be considered.

[63] *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

Appx015

plaintiff's claim of disability."[64] The Third Circuit has determined that "arm and neck pain[] are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury."[65] Relying on that holding, courts within this circuit have held that depression,[66] anxiety and posttraumatic stress disorder,[67] and learning disabilities[68] are within the comprehension of a lay jury such that medical evidence is not required to substantiate those impairments.

The Court, however, has been unable to locate any case holding that spinal impairments such as a bulged or herniated disk are within the comprehension of a lay jury. The injuries themselves may be fairly common, and a lay person may even be able to understand at a basic level how such an impairment could be limiting. Nevertheless, absent medical testimony or diagnostic tests, no lay person could reasonably conclude that an individual actually suffers from a bulged or herniated disk nor, absent such evidence, would a jury understand the severity of the ailment and its possible limiting effects. Consequently, the Court concludes that a bulged or herniated disk "is [not] within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge"[69] and must therefore be

---

[64]  *Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 360 (3d Cir. 2000).

[65]  *Id.* at 361.

[66]  *Est. of Murray v. UHS of Fairmount, Inc.*, No. CIV.A. 10-2561, 2011 WL 5449364, at *6 (E.D. Pa. Nov. 10, 2011).

[67]  *Nagle v. Comprehensive Women's Health Servs., P.C.*, No. 3:15-CV-0042, 2018 WL 1473833, at *13 (M.D. Pa. Jan. 19, 2018), *report and recommendation adopted*, No. 3:15-CV-0042, 2018 WL 1474545 (M.D. Pa. Mar. 26, 2018).

[68]  *Dorn v. Potter*, 191 F. Supp. 2d 612, 623 (W.D. Pa. 2002).

[69]  *Marinelli*, 216 F.3d at 360.

Appx016

substantiated by medical evidence.[70] Because Morgan has failed to present such evidence, his ADA and PHRA claims cannot proceed based on his alleged disk impairments.

That still leaves the possibility that Morgan may proceed with claims based on his alleged generalized back pain, as no medical evidence is required to establish back pain as an impairment.[71] It is undisputed that Morgan's chiropractor placed bending and lifting restrictions on Morgan and, as a result, Allison Crane restricted Morgan to light duty at work.[72] It may be inferred that these restrictions were a result of the back pain that Morgan alleges he was then experiencing.[73] Because both "lifting" and "bending" qualify as major life activities, Morgan's back pain may constitute a physical impairment sufficient to qualify him as disabled under the ADA and PHRA.[74]

---

[70] *Cf. Patrick v. Henry Cnty.*, No. 1:13-CV-01344-RWS, 2016 WL 2961103, at *4 (N.D. Ga. May 23, 2016) (holding that "meningitis and adhesive arachnoiditis are not the kinds of diseases that are generally understood by lay people" and therefore medical evidence substantiating the impairments was required).

[71] *See Marinelli*, 216 F.3d at 361 (noting that arm and neck pain "are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury").

[72] Doc. 35-2 at 8-12; Doc. 40-4 at 11.

[73] Although the notes from Morgan's chiropractor do not state what condition limited Morgan's ability to bend or lift, drawing all reasonable inferences in Morgan's favor, it may be inferred that the limitation was related to the back pain that he reported to his supervisors. *See* Doc. 35-2 at 8-12 (chiropractor notes restricting the weight that Morgan may lift); Doc. 40-4 at 11 (Morgan discussing severe back pain and noting that he "was already on the weight restriction given to me by the chiropractor office").

[74] *Wilson v. Iron Tiger Logistics, Inc.*, 628 F. App'x 832, 835 (3d Cir. 2015) (quoting 42 U.S.C. § 12102(2)(A)) (noting that bending and lifting are major life activities).

Again, however, Morgan's claimed disabling impairment runs into an insurmountable hurdle. The Third Circuit in *Macfarlan v. Ivy Hill SNF, LLC* reiterated that "[a] temporary non-chronic impairment of short duration is not a disability covered by the [ADA and PHRA]."[75] There, the court noted that, although the plaintiff was restricted in his ability to lift, those "temporary lifting limitations, which were removed only four months after first imposed, are the very definition of such a non-chronic impairment."[76] The Third Circuit therefore held that the plaintiff's "lifting restriction was not a qualifying disability under" either the ADA or the PHRA, and the grant of summary judgment in favor of the defendant had been appropriate.[77]

Here, Morgan's back pain and concomitant bending and lifting restrictions are even less amenable to a finding of disability than were those presented in *Macfarlan*. Lifting restrictions were first imposed on Morgan on October 8, 2020,[78] and it is uncontested that Morgan was released to full occupational duties with no restrictions on November 25, 2020—a mere 48 days after restrictions were first imposed.[79] Morgan acknowledges that, since that time, he suffers from no pain or limitations, and he is currently engaged in employment that requires heavy manual labor.[80] If

---

[75] 675 F.3d 266, 274 (3d Cir. 2012) (internal quotation marks omitted). *See also Bangura v. Pennsylvania*, 793 F. App'x 142, 145 n.3 (3d Cir. 2019) (same).
[76] *Macfarlan*, 675 F.3d at 274.
[77] *Id.* at 275.
[78] Doc. 35-2 at 8.
[79] Doc. 35 ¶ 56; Doc. 40-1 ¶ 56.
[80] Doc. 35 ¶¶ 57-61; Doc. 40-1 ¶¶ 57-61.

four months of limited lifting restrictions[81] is insufficient to establish a disability, the Court cannot conclude that limited lifting restrictions for a period of 48 days may establish a disability.[82] Consequently, Morgan suffered from no disabling impairment under the ADA or PHRA.[83]

### b.    Regarded as Disabled

Simply because Morgan was not disabled does not, however, end this Court's inquiry, as Morgan may still pursue ADA and PHRA claims if he was "regarded as" disabled by Allison Crane.[84] The Third Circuit has held that "[a] plaintiff states a 'regarded as' claim if s/he 'establishes that he or she has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'"[85] "An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements.[86]

---

[81] The plaintiff in *Macfarlan* was limited to lifting no more than twenty pounds. 675 F.3d at 270.

[82] Nor is there any evidence in the record that would establish that Morgan's back pain is "episodic or in remission" such that it would qualify as a disability regardless of the short duration of that pain. 42 U.S.C. § 12102(4)(D).

[83] Similarly, Morgan cannot establish that he has a record of any such impairment, as he does not have "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). And notably, Morgan does not argue that he has a record of such an impairment. *See* Docs. 40, 47.

[84] 42 U.S.C. § 12102(1)(C).

[85] *Eshleman*, 961 F.3d at 245 (brackets and internal quotation marks omitted).

[86] *Id.* (brackets and internal quotation marks omitted).

16

**Appx019**

"However, the ADA limits 'regarded as' claims by excluding 'impairments that are transitory and minor.'"[87] "Accordingly, if the perceived disability is 'transitory and minor,' a plaintiff cannot state a 'regarded as' discrimination claim."[88] "The ADA defines 'transitory' as 'an impairment with an actual or expected duration of 6 months or less,' but does not define 'minor.'"[89]

Despite the absence of a clear cut rule regarding what constitutes a "minor" impairment, the Third Circuit has held that whether an impairment is minor must be considered on a "case-by-case basis" by examining "such factors as the symptoms and severity of the impairment, the type of treatment required, the risk involved, and whether any kind of surgical intervention is anticipated or necessary—as well as the nature and scope of any post-operative care."[90] To establish a defense that an impairment is transitory and minor, "an employer must establish that the perceived impairment is objectively *both* transitory and minor," meaning "that 'transitory' is just one part of the two prong 'transitory and minor' exception."[91]

Here, Morgan's impairment was indisputably transitory—he was placed under lifting restrictions for only 48 days, well below the six-month cutoff for a transitory impairment, and there is no indication that Allison Crane believed the restrictions would last for an extended duration. Turning to the question of whether

---

[87] *Id.* at 246 (quoting 42 U.S.C. § 12102(3)(B)).
[88] *Id.*
[89] *Id.* (quoting 42 U.S.C. § 12102(3)(B)).
[90] *Id.* at 249.
[91] *Id.* at 247-48.

**Appx020**

Morgan's back pain[92] was minor, the Court concludes that it was. Neither the symptoms nor the severity of the injury supports the conclusion that it was anything other than minor because, while Morgan experienced back pain, he missed no work, was only mildly limited in his ability to bend and lift, and suffered from no other restrictions. Further, the treatment required was fairly minor, consisting of chiropractic treatments that lasted just over two months with no surgical intervention required, and no pain medications prescribed.[93] Accordingly, no reasonable juror could conclude that Morgan's back pain was anything other than minor.[94]

Importantly, Allison Crane did not think that Morgan's injury was anything other than transitory and minor. Morgan continued to work without interruption, the chiropractor's restrictions on Morgan's ability to bend and lift were fairly negligible and always temporary in nature, and Morgan's supervisors directly stated that they felt his impairment was not severe and did not impact his ability to work at light duty.[95] Consequently, "[t]he undisputed evidence shows that [Allison Crane] did not consider [Morgan] in any way disabled," meaning that Morgan cannot establish that he was "regarded as" disabled under the ADA.[96]

---

[92] The Court need not consider whether a bulged or herniated disk would qualify as a minor impairment because, as discussed above, Morgan has failed to establish the presence of a bulged or herniated disk, and Morgan also has not established that Allison Crane believed that Morgan suffered from a bulged or herniated disk.

[93] Doc. 40-9 at 2-3.

[94] *Cf. Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 260 (3d Cir. 2014) (concluding that a broken finger that resulted in the loss of the use of three fingers for approximately two months and merely slowed down the plaintiff's ability to work was transitory and minor).

[95] Doc. 35-1 at 11.

[96] *Macfarlan*, 675 F.3d at 275 (quoting *Wilson v. MVM, Inc.,* 475 F.3d 166, 179 (3d Cir. 2007)).

In sum, Morgan has failed to establish that he had a disability or was regarded as having a disability during his employment with Allison Crane, and he cannot establish a *prima facie* case of disability discrimination. The Court will therefore grant Allison Crane's motion for summary judgment as to Counts One and Two of the amended complaint.

### 2. Wrongful Discharge Claim

Turning then to Morgan's claim for wrongful discharge, under Pennsylvania law "[a]n employee may bring a cause of action for a termination of [his employment] only in the most limited circumstances, where the termination implicates a clear mandate of public policy."[97] The Supreme Court of Pennsylvania has held that such a public policy is implicated when an employee files a claim for workers' compensation and, therefore, employees may pursue a claim for "retaliatory discharge for the filing of a workers' compensation claim."[98] Although that court has only held that an employee is protected from retaliation after filing a workers' compensation claim, this Court and others have determined that employees may "seek redress for workers' compensation retaliation without actually filing a workers' compensation claim."[99]

---

[97] *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009).
[98] *Shick v. Shirey*, 716 A.2d 1231, 1232 (Pa. 1998).
[99] *Bamat v. Glenn O. Hawbaker, Inc.*, No. 4:18-CV-01898, 2019 WL 3387660, at *2 (M.D. Pa. July 26, 2019).

19

**Appx022**

To establish a *prima facie* case of wrongful discharge for filing a workers' compensation claim, a plaintiff must demonstrate that he "(1) engaged in protected activity, (2) suffered an adverse employment action either after or contemporaneously with the protected activity, and (3) there is a causal connection between the protected activity and adverse action to a workers' compensation retaliation claim under Pennsylvania law."[100] When an employee intends to file a workers' compensation claim, but never actually files such a claim prior to any alleged retaliation, to demonstrate that he engaged in protected activity the employee "must (1) report the work-related injury; and (2) express to his employer his intent to file a workers' compensation claim."[101]

The Court concludes that Morgan's wrongful discharge claim fails because he has not demonstrated that he engaged in protected activity, and thus has not established a *prima facie* case of wrongful discharge. The parties agree that Morgan did not file a workers' compensation claim, and he therefore must demonstrate that he both reported his work-related injury and expressed to Allison Crane his intent to file a workers' compensation claim.[102]

As to the first element, the evidence is plainly sufficient to establish—for the purpose of summary judgment—that Morgan reported his workplace injury. Morgan

---

[100] *Smith v. Tervita Env't Servs., Corp.*, No. CV 21-295, 2022 WL 4926662, at *2 (W.D. Pa. Oct. 4, 2022).

[101] *Bamat*, 2019 WL 3387660 at *2.

[102] *Id.*

testified at his deposition that, on the day of the injury, he reported his injury to his immediate supervisor and, after receiving chiropractic treatment, informed all of the relevant decisionmakers at Allison Crane of both the injury and chiropractic treatment.[103] And, in response to notes from Morgan's chiropractor imposing weight restrictions, Allison Crane placed Morgan on light duty.[104]

However, Morgan cannot establish that he ever informed anyone at Allison Crane of a desire to file a workers' compensation claim. To the contrary, while Morgan researched how to open a workers' compensation claim, he never discussed filing such a claim with anyone at Allison Crane, nor is there any evidence that he ever—in any manner—expressed to anyone at Allison Crane a desire to file a workers' compensation claim.[105] Morgan's failure to express such an intent to anyone at Allison Crane is fatal to his wrongful discharge claim.[106]

To be sure, Morgan alleges that Allison Crane discouraged him from filing a workers' compensation claim.[107] But regardless, the focus must always remain "on what the plaintiff did to engage in protected activity," rather than on what the employer may have done.[108] Even if one may logically infer from Allison Crane's behavior in actively discouraging Morgan from filing a claim that it (or rather,

---

[103] Doc. 35-1 at 9-11.
[104] Doc. 35 ¶ 36.
[105] Doc. 35 ¶¶ 51-53; Doc. 40-1 ¶¶ 51-53.
[106] *Bamat*, 2019 WL 3387660 at *3.
[107] Doc. 40-4 ¶ 24.
[108] *Bamat*, 2019 WL 3387660 at *2.

Morgan's supervisors) subjectively believed that Morgan may have desired to file a claim for workers' compensation, as this Court has previously made clear, such a subjective belief on the part of the employer is insufficient to establish that a plaintiff engaged in protected activity.[109] Rather, "even if [Allison Crane] believed that [Morgan] intended to file a workers' compensation claim and was aware of his injury, that does not absolve [Morgan] from the requirement that he express to [Allison Crane] his intent to file a [workers'] compensation claim."[110]

Consequently, the evidence creates no genuine issue of material fact as to whether Morgan established that he engaged in protected activity. He did not, and has thus failed to establish a *prima facie* case of wrongful discharge. Allison Crane's motion for summary judgment will therefore be granted as to Count Three.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Allison Crane's motion for summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[109] *Id.*
[110] *Id.* at *3.

Appx025